# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **JOHN W. COSTELLO,** not individually, but as Litigation Trustee under the Comdisco Litigation Trust, | |
| **Plaintiff,** | **Nos. 05c736, 05c740, 05c746, 05c764** |
| v. | **Magistrate Judge Mary M. Rowland** |
| **MIKE J. POISELLA, ROMAN BRUNNER, JOSEPH J. SCOZZAFAVA, and GREGORY A. WEISS,** | |
| **Defendants.** | |

## MEMORANDUM OPINION AND ORDER

Nonparty Nisen & Elliott, LLC moves the Court to bar Defendants' use or disclosure of two memoranda in these proceedings, which it contends are protected by the work-product privilege, find that the memoranda remain privileged, and award sanctions. For the reasons stated below, the Motion is granted in part and denied in part. Defendants' Cross-Motion to Strike is denied.

## I. BACKGROUND

Defendants are former high-level employees of Comdisco, Inc., who participated in Comdisco's shared investment plan (SIP) program by purchasing shares of Comdisco stock in 1998. *Costello v. Grundon*, 651 F.3d 614, 618 (7th Cir. 2011). The stock purchases were funded entirely by personal loans from participating banks

(Lenders) represented by First National Bank of Chicago (later Bank One) as their agent. *Id.* To secure the loans, Defendants executed promissory notes (Notes) in their personal capacities. *Id.* Comdisco guaranteed the loans (Guaranty), received the loan proceeds, and held the SIP shares. *Id.*

In July 2001, Comdisco filed for bankruptcy. *Costello*, 651 F.3d at 620. The bankruptcy filing was an event of default under the Notes and caused Bank One to accelerate all amounts outstanding on the Notes. *Id.* Bank One, on behalf of the Lenders, filed a proof of claim in the Comdisco bankruptcy. *Id.*

In November 2001, approximately 70 current and former employees of Comdisco who had participated in the SIP, including Defendants Poisella, Scozzafava, and Weiss, retained Gini S. Marziani to prepare proofs of claims to be filed in the bankruptcy proceedings. (Dkt. 219 (Marziani Decl.) at ¶ 5).[1] In April 2002, Marziani met with Robert Lackey, Comdisco's general counsel, to argue that both Comdisco and Bank One had violated margin regulations and that, as a result, the Notes were void and unenforceable. (*Id.* ¶ 9).

In Spring 2002, Comdisco retained the legal services of William J. Raleigh to determine if Comdisco had a good faith basis to file an objection to the Bank One proof of claim. (Dkt. 202 Ex. A (Raleigh 2/18/2013 Decl.) at ¶¶ 2–3). In early May 2002, Raleigh provided Lackey with a draft copy of a memorandum, dated May 7, 2002 (May 2002 Memorandum), for his review. (*Id.* ¶¶ 4–5). After receiving feedback from the client, Raleigh prepared a detailed, confidential memorandum, dated June

---

[1] The docket cites in this Opinion refer only to the *Costello v. Poisella* matter, 05 C 736.

4, 2002 (June 2002 Memorandum, and together with the May 2002 Memorandum, "Memoranda"), for Lackey's review. (Dkt. 202 Ex. A at ¶¶ 6–8). Raleigh contends (and the Court agrees) that the contents of the Memoranda contain his "opinion work product as to the validity of the legal and factual objections that Comdisco could make to Bank One's claim in the pending bankruptcy." (*Id.* ¶ 8).

Raleigh has no memory of voluntarily producing the Memoranda to Marziani, and he cannot locate any correspondence or record of voluntarily producing them. (Dkt. 224 Ex. C (Raleigh 4/12/2013 Decl.) at ¶¶ 9, 14; *see id.* ¶¶ 17–18). Further, producing such highly confidential work product would not comport with his normal practice. (*Id.* ¶ 11). Marziani, on the other hand, recalls Raleigh's voluntary production of both Memoranda to her. (Dkt. 219 at ¶¶ 9, 11, 12, 17). Raleigh's lack of memory aside, there is absolutely no evidence in the record to support any conclusion other than that Raleigh voluntarily produced the Memoranda to Marziani in 2002. According to Defendants, that fact constitutes waiver of the work product privilege. Raleigh responds that any voluntary production was made pursuant to a common interest and, therefore, there was no waiver.

## A. Comdisco and Defendants worked "shoulder to shoulder" in an effort to defeat Bank One in the Bankruptcy proceeding.

Raleigh attests that during 2002 he (1) met with Marziani to review documents related to the SIP program, (2) shared factual information regarding the SIP program with Marziani, (3) discussed with Marziani whether Comdisco could file and pursue valid objections to Bank One's claim, and (4) sought Marziani's input into Comdisco's objections to Bank One's claims. (Dkt. 224 Ex. C at ¶¶ 12–13, 24–33). In

addition, Raleigh asserts that during this time, Defendants made "substantial confidential disclosures" to Raleigh as part of Comdisco's investigation of the SIP program. (*Id.* ¶ 48).

None of this is disputed by Marziani. Defendants describe the relationship as Defendants and Comdisco "working shoulder to shoulder" to defeat Bank One's claim. "Comdisco and SIP Participants (represented by Mr. Raleigh and Ms. Marziani, respectively) joined forces against the Bank, together both urging that the SIP Notes and the Guaranty be held void and unenforceable." (Dkt. 207 at 4, 9). For instance, she admits that on May 17, 2002, she met with Lackey and Raleigh to discuss their mutual "strategy for presentation of the arguments to the Bank that the margin regulations had been violated and the resulting legal consequences of those violations." (Dkt. 219 at ¶ 16). She also reviewed a draft of Comdisco's objection to Bank One's master proof of claim prior t its being filed in the bankruptcy proceeding. (*Id.* ¶ 19).

In October 2002, Raleigh, Marziani, and others, including may of Marziani's clients, met to discuss Comdisco's litigation strategy and its intent to pursue certain objections to Bank One's proof of claim, including potential margin violations. (Dkt. 224 Ex. C at ¶¶ 26–30). The meeting participants also discussed the legal options available to Defendants, and Raleigh voiced his opinion that a Seventh Circuit decision, *Bassler v. Central National Bank*, 715 F.2d 308 (7th Cir. 1983), might preclude investment borrowers like Defendants from having a private right of action against

lenders under Sections 7(b) and 29(b) of the Exchange Act. (Dkt. 224 Ex. C at ¶¶ 28–30).

In January 2003, Comdisco filed amended objections to Bank One's proof of claim, requesting that Bank One's claim be disallowed on the grounds that Bank One had violated the margin regulations rendering the Notes and Guaranty void and unenforceable. (Dkt. 219 at ¶ 21). Shortly thereafter, over 50 individuals who had participated in the SIP, and who were Marziani's clients, moved to intervene on Comdisco's side in the dispute between Comdisco and Bank One regarding the master proof of claim. (*Id.* ¶ 22). According to Raleigh, "[a]t that time, both Comdisco and Ms. Marziani's clients had consistent positions." (Dkt. 224 Ex. C at ¶ 31). Marziani agrees that "Comdisco had publicly embraced the position that [her firm] had been making on behalf of our clients regarding the SIP that [margin regulations] had been violated."). (Dkt. 219 at ¶ 20). In February 2003, by agreement with Comdisco and Bank One, the intervention was allowed. (Dkt. 224 Ex. C at ¶¶ 32–33; Dkt. 219 at ¶ 22). As part of the intervention agreement, the SIP participants stipulated that they would pursue no claims against Comdisco. (Dkt. 206 Ex. I at ¶ G; Dkt. 219 at ¶ 22).

In November 2004, Comdisco reached a settlement agreement with Bank One regarding the master proof of claim. (Dkt. 219 at ¶ 24). As part of the settlement, Comdisco paid the Lenders over $126 million in exchange for the Lenders' assignment to the Comdisco Litigation Trustee of all rights under the Notes against Defendants. *Costello*, 651 F.3d at 620. In February 2005, the Trustee filed the instant

actions against Defendants, seeking to enforce the SIP Notes. *Id.* Defendants asserted several affirmative defenses, including fraud, illegality, unenforceability, securities fraud, and breach of contract. *Id.* at 620–21.

## B. The Memoranda have thus far been protected, without objection, by the work product privilege in this case.

In August 2005, Defendants served discovery requests on Comdisco. (Dkt. 219 at ¶ 27). In its response, Comdisco withheld the June 2002 Memorandum and included it on its October 2006 privilege log as "attorney work product." (Dkt. 224 Ex. C at ¶ 36). Defendants have never objected to this designation. (*Id.*).

The Trustee served discovery requests on Defendants in December 2005. (Dkt. 219 at ¶ 29). In February 2007, while collecting documents responsive to the Trustee's document requests, Marziani contacted Raleigh to indicate that a plethora of documents produced to Defendants by Comdisco would be produced in response to the Trustee's document requests. (*Id.* ¶¶ 31–32, Ex. FF). Marziani specifically indicated that the June 2002 Memorandum would be included in this production. (*Id.*). Comdisco objected because the June 2002 Memorandum was privileged opinion work-product. According to Raleigh, in 2007 discussions with Marziani about the Memoranda, Raleigh "questioned whether we had a common interest *agreement,* and Ms. Marziani informed me that we had no such *agreement,* but conceded we were working together at the time." (Dkt. 224 Ex. C at ¶ 35) (emphasis in original). He thereafter wrote to Marziani: "I thought we had a common interest privilege, but apparently we did not. I cannot prevent you from publishing my work product." (Dkt. 219 Ex. GG). Significantly, after these discussions, Marziani did not produce

either of the Memoranda to the Trustee. (Dkt. 224 at 21, 31, Ex. C at ¶ 39). Nor did Defendants ever list the Memoranda on a privilege log.

## C. Defendants serve N&E with a Subpoena for the Memoranda.

In December 2012, Defendants served Raleigh at Nisen & Elliott, LLC (N&E) with a subpoena *duces tecum* (Subpoena). (Dkt. 202 at ¶ 2). The request demanded production of, among other documents, a "16-page legal Memorandum . . . from 'WJR' dated 'May 7, 2002' regarding the subject 'Analysis of Shared Investment Plan.'" (*Id.*). In its objections to the Subpoena, N&E stated that it was unable to locate the May 2002 Memorandum, but had located a 49-page memorandum dated June 4, 2002, with the same title.[2] (*Id.* ¶ 3). On January 13, 2013, N&E produced nonprivileged documents that were responsive to the subpoena requests. (*Id.* ¶ 3 n.2). N&E asserted that the June 2002 Memorandum is protected opinion work product and would not be produced. (*Id.*).

On a January 24, 2013 conference call, Defendants' counsel informed Raleigh that despite serving the Subpoena requesting production of the May 2002 Memorandum, they already possessed both the May 2002 Memorandum and the June 2002 Memorandum. (Dkt. 202 Ex. A at ¶¶ 14–15). On February 1, 2013, Defendants "suspended without prejudice" their request for the Memoranda. (Dkt. 207 at 7; *see* Dkt. 206 Ex. Q at ¶¶ 1–2). On February 19, 2013, N&E filed the instant Motion for Protective Order, which the district court referred to the undersigned magistrate judge for a decision. Remarkably, despite N&E having raised the work-product priv-

---

[2] N&E later secured a copy of the May 2002 Memorandum from Comdisco's files. (Dkt. 202 at ¶ 3; Dkt. 202 Ex. A at ¶ 16).

ilege, Defendants distributed the Memoranda to the Plaintiff Trustee[3] and to fellow defendants in related state court proceedings. When asked about this decision, Defendants' counsel stated that they

> would not have produced those documents on February 6th after [N&E] raised this issue unless . . . we knew . . . that there was a waiver here . . . I'm confident of that your Honor, we would not have made the production if we were not sure that in our view that Mr. Raleigh was raising something that we think is essentially a frivolous issue. . . . [W]e wouldn't have made the production if we had any doubt in our mind that there was a waiver with respect to these documents.

(Dkt. 224 Ex. B at 26–27, 35).[4]

## II. DISCUSSION

### A. Jurisdiction

In their Cross-Motion to Strike, Defendants request that the Court strike out and disregard the motion and declaration filed by N&E. (Dkt. 206 at 3). The gravamen of Defendants' motion is that N&E lacks standing and the Court lacks jurisdiction to hear N&E's Motion for Protective Order. In support, Defendants argue: (1) N&E must first file, and have granted, a motion to intervene pursuant to Rule 24; (2) Rule 26 does not provide N&E any standing to seek relief from this Court; (3) the

---

[3] The Trustee returned the documents to N&E and takes no position on this dispute. (Dkt. 224 Ex. B at 3, 8–9).

[4] *Cf. Evans v. City of Chicago*, 513 F.3d 735, 745–46 (7th Cir. 2008) (rejecting counsel's explanation for his failure to act because he assumed he would prevail on his argument stating: "because Judge Coar had not yet ruled on that issue, Evans should not have assumed that the court would see the issue his way"); *see also* Fed. R. Civ. P. 45(d)(2)(B) ("After being notified [of privilege claim], a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim.").

Memoranda were acquired outside of the present lawsuit; (4) N&E's Motion acts as a prior restraint of speech; and (5) Rule 45 does not apply. (*Id.* ¶¶ 4–6; Dkt. 207 at 9–15; Dkt. 223 at 4–13). The Court disagrees.

### 1. *A nonparty subjected to a subpoena issued pursuant to Federal Rule of Civil Procedure 45 need not intervene under Rule 24 to be heard.*

By issuing and signing the Subpoena, Defendants' counsel acted as an officer of the Court and invoked the force of the Court. *See* Fed. R. Civ. P. 45(a)(3) (granting counsel with the authority to "issue and sign a subpoena as an officer of [the] court"); 9A Wright & Miller, *Federal Practice and Procedure* § 2453, at 396 (3d ed. 2008) (Rule 45 is "explicit that the attorney acts as an officer of the district court when issuing and signing subpoenas, which means that the document has the force of the court behind it."). There can be no dispute that the Subpoena gave the Court jurisdiction over N&E and gave N&E standing to seek protection from this Court against its enforcement. *See Bueker v. Atchison, Topeka and Santa Fe Ry.*, 175 F.R.D. 291, 292 (N.D. Ill. 1997) (issuance of Rule 45 subpoena gave court jurisdiction over nonparty); *Peterson v. Farrakhan*, No. 03 C 319, 2009 WL 1543600, at *3 (N.D. Ind. June 2, 2009) (same); *Third Degree Films, Inc. v. Does 1–2010*, No. 4:11 MC 2, 2011 WL 4759283, at *2 (N.D. (N.D. Ind. Oct. 6, 2011) (serving a nonparty with a Rule 45 subpoena gives the nonparty standing to move to modify or quash the subpoena) (citing Fed. R. Civ. P. 45(c)(3)(B)); *EEOC v. Rexnord Indus., LLC*, No. at *4 (E.D. Wisc. June 29, 2012) (same); *see also* Wright & Miller, *Federal Practice and Procedure* § 2463.1, at 485 (3d ed. 2008) ("It is the issuing court that has the

necessary jurisdiction over the party issuing the subpoena and the person served with it to enforce the subpoena.").

Defendants rely on wholly inapposite cases where a court strikes pleadings filed by nonparties who have *not* been subpoenaed pursuant to Rule 45. *See Rubin v. Islamic Republic of Iran*, No. 03 C 9370, 2008 WL 2531197, at *1 (N.D. Ill. June 25, 2008) (striking the motion to dismiss filed by plaintiffs *in a related case* who moved to dismiss *the original plaintiff's complaint* "[b]ecause the *Peterson* plaintiffs are not parties to this case"); *Hines v. Save-A-Lot/Supervalue, Inc.*, No. 06 C 490, 2007 WL 1317132, at *2 (N.D. Ill. May 3, 2007) (striking summary judgment motion filed by Moran Foods who was never named a defendant in the case after observing: "Why, as a non-party, Moran Foods has chosen to attempt to participate in the case, or why it sometimes refers to itself as a 'defendant,' is a mystery to us."); *Grove Fresh Distrib., Inc. v. John Labatt, Ltd.*, 888 F. Supp. 1427, 1451–52 (N.D. Ill. 1995) (sanctioning attorney who, having been fired by plaintiff, persisted in filing an appellate brief and representing that he was "counsel of record"). Defendants also attempt to rely on cases where non-subpoenaed third-parties attempt to intervene, *EEOC v. Ill. Dep't of Employment Sec.*, 6 F. Supp. 2d 784, 787 (N.D. Ill. 1998) (denying nonparty employer's motion to intervene to object to subpoena served by the EEOC on the Illinois Department of Employment Security, a state agency which referred job applicants to the nonparty employer); *In re Associated Press*, 162 F.3d 503 (7th Cir. 1998) (affirming the denial of a procedurally defective motion to intervene); *United States v. AT&T Co.*, 624 F.2d 1285 (D.C. Cir. 1980) (reversing decision by district court to

deny press association's motion to intervene); *Formulabs, Inc. v. Hartley Pen Co.*, 275 F.2d 52 (9th Cir. 1960) (trade secret licensor has right to intervene where its trade secrets may be disclosed in the course of the pending litigation); *Nelson v. Greenspoon*, 103 F.R.D. 118 (S.D.N.Y. 1984) (granting non-subpoenaed third party's motion to intervene to protect potentially privileged documents, but finding the documents themselves not privileged). These cases, too, are wholly inapposite to whether this Court has authority to rule on N&E's motion for protective order in light of the fact that N&E is the subject of a subpoena.

Defendants contend that Rule 45 does not confer jurisdiction because they "suspended without prejudice" their request for the Memoranda after N&E produced documents and objected to the request for the Memoranda but before N&E filed its motion. (Dkt. 207 at 7). Defendants cite no authority for this proposition, and this Court is not persuaded. First, while Rule 45 explicitly grants counsel the authority to issue a subpoena, *see* Fed. R. Civ. P. 45(a)(3), only the court has the authority to modify or quash a subpoena, *see* Fed. R. Civ. P. 45(c)(3). In fact, Rule 45(c)(3)(A)(iii) and (iv) *mandate* that a court "shall quash or modify" a subpoena if it (iii) "requires disclosure of privileged" material if no waiver applies or (iv) "subjects a person to undue burden." Although Defendants are not moving to enforce the subpoena and have instead, "suspended it without prejudice," the Court finds no authority that such a maneuver strips the Court of its authority to protect persons subjected to a subpoena. It strikes the Court as fundamentally unfair to allow a party to invoke the power of the Court to compel production of documents and then, when the sub-

poenaed party raises an objection, allow that party to unilaterally deny the subpoenaed party access to the court by "suspending without prejudice" its request. This Court believes that the matter is ripe for a ruling as to how the Memoranda are to be used in this action.

### 2. This Court finds that N&E is a person "from whom discovery is requested" pursuant to Federal Rule of Civil Procedure 26.

Rule 26 allows "any person from whom discovery is requested" to seek a protective order "forbidding disclosure or discovery." Fed. R. Civ. P. 26(c)(1). Clearly, the Subpoena requested discovery from N&E. Nevertheless, Defendants contend that because they have "suspended" their request, N&E is no longer a party or person "from whom discovery is sought," and therefore cannot avail itself of the protections embodied in Rule 26(c). The cases Defendants rely on are inapposite because they involve entities who were never served subpoenas seeking protection from the production of discovery. *See United States v. Duke Energy Corp.*, 218 F.R.D. 468, 469–70 & n.4 (M.D.N.C. 2003) (where discovery of documents given to defendant by non-party Utility Air Regulatory Group (UARG) *was sought from defendant,* court rejected UARG's claim that Rule 26 gave it an independent right to file a motion for protective order, because no discovery was being sought from UARG); *Leanders v. Yassai (In re Yassai)*, 225 B.R. 478, 480, 484 (Bankr. C.D. Cal. 1998) (finding non-party lacked standing to quash a Rule 45 subpoena *issued to a different nonparty*); *SEC v. Tucker*, 130 F.R.D. 461, 462 (S.D. Fla. 1990) (because the Office of the U.S. Attorney was neither a party *nor a person from whom discovery was sought*, it must intervene in order to seek protection for certain documents). Unlike in the instant

case, none of these cases involve the target of a Rule 45 subpoena seeking relief from the court.

Defendants also contend that Rule 26 does not apply because (1) N&E's motion is seeking the return of the Memoranda from Defendants, and (2) Rule 26(c) confers no authority on the Court to "restrain the dissemination of [the Memoranda because they were] acquired . . . *before* the commencement of th[is] action." (Dkt. 223 at 6–7, 9–10). But N&E is clear that it seeks only to limit the use of the Memoranda *in this action* and does not seek return of the Memoranda. (Dkt. 224 at 14–15) ("In the instant case, this Court is asked simply to limit the use to which the confidential document can be put in the proceeding before this Court. A court has much greater discretion to control the proceedings before it than it has to control the conduct of parties outside the courtroom. . . . This Court can prohibit the use of the Memoranda in this case. . . . The Defendants' cases do not prohibit a court from exercising its equitable powers to control, and preserve the integrity of, its judicial proceedings by limiting the use to which the documents could be put in the proceedings pending before the court.").

Finally, the Court has "the inherent authority to manage and oversee the discovery process." *Estate of Ungar v. Palestine Auth.*, 412 F. Supp. 2d 328, 333 (S.D.N.Y. 2006); *see White v. Office of the Pub. Defender*, 170 F.R.D. 138, 150 (D. Md. 1997) (courts have "inherent authority to control discovery"). Such authority extends beyond information acquired through formal discovery. *SEC v. Brady*, 238 F.R.D. 429, 445 (N.D. Tex. 2006). Indeed, the "court's power to remedy unfair litiga-

tion practices and preserve judicial integrity is broader in scope." *Lahr v. Fulbright & Jawaroski, LLP*, No. 94 C 0981, 1996 WL 34393321, at *3 (N.D. Tex. July 10, 1996); *see In re Shell Oil Refinery*, 143 F.R.D. 105, 108 (E.D. La. 1992) ("Federal courts have authority to remedy litigation practices that threaten judicial integrity and the adversary processes."). The issue here requires judicial intervention. Defendants should not be permitted to rely on the Court's subpoena authority to gather documents and then "suspend" the court's authority thereby denying the ability of a nonparty to request a ruling from the Court on the propriety of the subpoena's request.[5]

In sum, the Court finds that it has jurisdiction to rule on N&E's Motion for Protective Order. Accordingly, Defendants' Cross-Motion to Strike is denied.

## B. Work Product Protection

There is no dispute that the Memoranda at issue here contain opinion work product. However, Defendants contend that the work-product privilege was waived when Raleigh voluntarily delivered the Memoranda to Marziani shortly after they were authored in 2002. (Dkt. 223 at 1, 3, 13). Raleigh contends that no waiver occurred because Defendants and Comdisco possessed a common interest in defeating Bank One's claim at the time the Memoranda were shared.[6] (Dkt. 224 at 3).

---

[5] The parties make a number of arguments about the application of various state court rules to these issues. Because federal court rules apply here, the Court declines to address these arguments.

[6] N&E first raised the common interest issue in its reply. However, the doctrine was raised at the hearing (Dkt. 224 Ex. B at 12–14, 17–18), and Defendants have not objected to the Court's consideration of the doctrine or sought to file a sur-reply. Therefore, the Court will consider the applicability of the doctrine.

### 1. *Applicable Law*

The work product doctrine, formally codified in Rule 26, protects from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A); *see Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 478 (N.D. Ill. 2002). No one disputes that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor,* 329 U.S. 495, 510 (1947). Rule 26(b)(3) divides work product into two categories: "fact" work product and "opinion" work product. *Eagle Compressors*, 206 F.R.D. at 478. If the information sought is fact work product, the party seeking discovery must demonstrate "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). "This burden is difficult to meet and is satisfied only in "rare situations, such as those involving witness unavailability." *Eagle Compressors*, 206 F.R.D. at 478 (citation omitted).

With respect to opinion work product, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). "[O]pinion work product is protected even when undue hardship exists and therefore, is for all intents and purposes absolute." *Eagle Compressors*, 206 F.R.D. at 478 (citation omitted); *accord SmithKline Beecham Corp. v. Pentech Pharm., Inc.*, No. 00 C 2855, 2001 WL 1397876, at *3 (N.D. Ill. Nov. 6, 2001).

It is well-settled that the protection of the work-product doctrine may be waived. For example, the protection is waived when information is shared with an adversary. *SmithKline*, 2001 WL 1397876, at *3. Thus, the "protection of the work product doctrine may be waived where the protected communications are disclosed in a manner which substantially increases the opportunity for potential adversaries to obtain the information." *Id.* (citation omitted); *see Eagle Compressors*, 206 F.R.D. at 479 ("Because the protection is designed to protect an attorney's trial preparation and mental processes from discovery at the behest of an adversary, clearly voluntary disclosure *to an adversary* would almost invariably be seen as a total waiver.") (citation omitted) (emphasis added).

"Under the common interest doctrine, however, the disclosure of privileged material to a third party will not result in waiver if the parties share a common interest in the case." *McNally Tunneling Corp. v. City of Evanston, Illinois*, 00 C 6979, 2001 WL 1246630, at *2 (N.D. Ill. Oct. 18, 2001). Thus, "attorneys facing a common litigation opponent may exchange . . . attorney work product in order to prepare a common defense without waiving [the] privilege." *Schachar v. Am. Acad. of Ophthalmology, Inc.*, 106 F.R.D. 187, 191 (N.D. Ill. 1985). *BASF Aktiengesellschaft v. Reilly Indus., Inc.*, 224 F.R.D. 438, 442 (S.D. Ind. 2004) ("[W]aiver would not occur if disclosure of otherwise protected work product was made to a third party with a common legal interest or would not otherwise substantially increase the ability of an adversary to gain the information.").

The common interest doctrine is limited to those circumstances where the parties have an identical—not merely similar—legal interest and the communication is made to further the ongoing, common interest. *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815–16 (7th Cir. 2007); *see McNally Tunneling*, 2001 WL 1246630, at *2 ("To constitute a 'common interest' it is not enough that the parties have some interests that overlap; the parties must have a strong identity of interests."); *Pactiv Corp. v. Multisorb Techs., Inc.*, No. 10 C 461, 2012 WL 1831517, at *4 (N.D. Ill. May 18, 2012) (Common interest doctrine "applies only where the parties undertake a joint effort with respect to a common *legal* interest and is limited to those communications made to further an ongoing enterprise.").

However, the common interest doctrine "is not limited to parties who are perfectly aligned on the same side of a single litigation." *Cadillac Ins. Co. v. Am. Nat. Bank of Schiller Park*, 89 C 3267, 1992 WL 58786, at *5 (N.D. Ill. Mar. 12, 1992). Instead, the common interest applies where the parties "demonstrate actual cooperation toward a common legal goal with respect to the documents they seek to withhold." *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 273 (N.D. Ill. 2004). Parties can demonstrate an "identity of interests" by showing that documents were shared "for the purpose of cooperating in pursuit of a common legal goal." *Id.* Further, "[d]ocuments created prior to formation of the common interest still may be protected by that interest; it is the purpose for which the documents were disclosed, and not whether they predated or post-dated the inception of the common interest, which determines whether the common interest doctrine applies." *Id.* at 274 n.2.

Finally, there is no requirement that there be a written agreement to enjoy the protections of the common interest doctrine. *Pactiv*, 2012 WL 1831517, at *4; *see In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012) ("[T]he parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—*whether written or unwritten.*") (emphasis added).

### 2. Analysis

There is no question that the parties shared a common interest when the Memoranda were shared.[7] Moreover, the Memoranda were shared in order to further the common interest of Comdisco and Defendants in defeating Bank One's claim. Therefore, the Court finds that Raleigh did not waive the work product privilege when he shared copies of the Memoranda with Defendants.

As noted above, beginning in April 2002, and continuing through at least October 2004, Defendants and Comdisco held on-going discussions and shared information about Comdisco's objection to Bank One's claim by arguing that the Notes and Guaranty were void and unenforceable. If the Notes and Guaranty were void

---

[7] At the March 12, 2013 hearing, the Court noted that Defendants' jurisdictional objections were preserved, (Dkt. 224 Ex. B at 3, 9–10, 29–30, 32–33, 38–39, 42, 44), and requested briefing on whether Raleigh waived the work product privilege. (*Id.* 35–36, 42; *see* Dkt. 223 at 3–4). Defendants submitted ten pages of briefing revisiting their jurisdictional arguments and only one paragraph discussing waiver of work product. (*Compare* Dkt. 223 at 4–13 *with id.* at 13). Defendants devoted one word to addressing the common interest doctrine when they said Raleigh was "mistaken" that it applied. (*Id.* 3). Defendants have therefore waived any argument that the common interest doctrine does not apply. *Appert v. Morgan Stanley Dean Witter, Inc.,* 673 F.3d 609, 617 (7th Cir. 2012) (one-paragraph argument without citation to case law deemed waived); *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"); *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim.").

and unenforceable, Bank One's claim against both Defendants and Comdisco would be defeated. For this reason, Defendants moved to intervene on Comdisco's side in the dispute between Comdisco and Bank One. Comdisco and Defendants then filed *joint briefs* opposing Bank One's claim in the bankruptcy action. (Dkt. 206 Ex. K; Dkt. 206 Ex. L). Because it is undisputed that Defendants and Comdisco were actively working together to defeat Bank One's proof of claim, "the Court concludes that their interests were sufficiently aligned to bring them within the scope of the common interest doctrine." *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, No. 02 C 7345, 2003 WL 1989611, at *4 (N.D. Ill. April 28, 2003); *see also Schachar*, 106 F.R.D. at 191 ("It is now well established that attorneys facing a common litigation opponent may exchange privileged communications and attorney work product in order to prepare a common defense without waiving either privilege."); *Pampered Chef v. Alexanian*, 737 F. Supp. 2d 958, 965 (N.D. Ill. 2010) (finding that common-interest doctrine applies "broadly" and "includes situations where clients share a common legal interest but are represented by separate attorneys").

Moreover, the Memoranda contain Raleigh's opinions on the validity of the legal and factual objections that Comdisco could make to Bank One's claim, including potential regulatory margin violations. Thus, the purpose for sharing the Memoranda was to further Comdisco's and Defendants' common litigation interest. *See Dexia*, 231 F.R.D. at 273 (common interest established when documents were shared "for the purposes of cooperating in pursuit of a common legal goal").

A trickier question is whether the work product privilege was waived in 2007. By that time, any common interest had dissolved. Comdisco had settled its dispute with Bank One, and Comdisco's bankruptcy trustee had filed this suit against the Defendants. In response to discovery requests by the Trustee, Marziani specifically told Raleigh that the June 2002 Memorandum would be included in this production. Raleigh objected based on opinion work-product. According to Raleigh, he "questioned whether we had a common interest *agreement,* and Ms. Marziani informed me that we had no such *agreement,* but conceded we were working together at the time." (Dkt. 224 Ex. C at ¶ 35) (emphasis in original). He thereafter wrote to Marziani: "I thought we had a common interest privilege, but apparently we did not. I cannot prevent you from publishing my work product."[8] (Dkt. 219 Ex. GG). While this language indicates Raleigh's belief, a mistaken belief in the Court's opinion, that the parties were not operating pursuant to a common interest in 2002, it does not constitute a waiver. *BDO Seidman*, 492 F.3d at 817 ("common interest doctrine cannot be waived without the consent of all of the parties").

More significant to the Court is the fact that after this 2007 interaction, Defendants themselves neither produced the Memoranda nor indicated that the Memoranda existed by placing them on a privilege log. As stated previously, when Comdisco included the June 2002 Memorandum on its privilege log in October 2006, Defend-

---

[8] Marziani describes the February 8, 2007 letter from Raleigh as a threat to retaliate if Defendants disclosed the Memoranda. (Dkt. 219 at ¶¶ 33–34). The Court disagrees. A careful reading indicates that Raleigh was asserting that if Marziani persisted in her position that the parties' 2002–2004 communications were not privileged then *both* parties would be free to disclose confidential information that had been shared during that period. (*See* Dkt. 224 Ex. C at ¶¶ 48, 51).

ants did not object to it being identified as attorney work product. (Dkt. 224 Ex. C at ¶¶ 35, 36, 47; Dkt. 219 at ¶ 32). On this record, the Court cannot find that Raleigh waived his claim to his attorney work product privilege. *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 732 (8th Cir. 2002) ("With respect to the issue of implied waiver, the Court must not only look at whether [the author] intended to waive the privilege, but also whether the interests [of] fairness and consistency mandate a finding of waiver.").

## C. Summary

The Memoranda are protected from disclosure in this action by the opinion work-product and common-interest doctrines, and Raleigh has not waived the privilege. *See Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006) ("It is well-established that the work-product privilege may be invoked by either the client or the attorney."). Defendants are barred from using or disclosing the Memoranda in these proceedings. However, because the Memoranda were not produced pursuant to the Subpoena, the Court declines to order Defendants to retrieve the copies distributed to their state-court co-counsel.

## III. CONCLUSION

For the reasons described above, Nisen & Elliott, LLC's Motion for Protective Order [202] is GRANTED IN PART and DENIED IN PART. Nisen & Elliott, LLC's request for sanctions and fees is DENIED. Defendants' Cross-Motion to Strike [206] is DENIED.

E N T E R:

Dated: June 10, 2013

_____
MARY M. ROWLAND
United States Magistrate Judge